United States Court of International Trade
One Federal Plaza
New York, NY 10278



CHAMBERS OF
Gary S. Katzmann
JUDGE

April 26, 2022

Matthew P. McCullough                          Raymond P. Paretzky
Curtis, Mallet-Prevost, Colt & Mosle LLP        McDermott, Will & Emery, LLC
1717 Pennsylvania Avenue, NW                     500 N. Capitol Street, NW
Washington, D.C. 20006                           Washington, D.C. 20001

Sonia W. Murphy
U.S. Department of Justice
Commercial Litigation Branch, Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Re:   **Asociacion de Exportadores e Industriales de Aceitunas de Mesa et al. v. United States**
      **Court No.: 18-00195**
      **Questions for Oral Argument**

Dear Counselors:

Oral argument in this case will be held in the James L. Watson Courthouse on Wednesday, May 11, 2022 at 11:00 a.m.  The argument, if public and not closed, will be recorded and may be made available to the public via the court's website.  If you will be requesting a closed argument or portions of the argument, please inform my case manager, Geoffrey Goell, no later than close of business, Friday, May 6, 2022.  The court encourages the parties to maintain a public argument, if possible.

The court has examined the parties' briefs and documents and would like counsel to submit answers in writing to the court's questions for oral argument by close of business on Friday, May 6, 2022.  Parties shall file public and, if necessary, confidential versions of their answers, of not more than fifteen pages.  The oral argument shall be dedicated primarily to rebuttal arguments to the answers filed by opposing counsel on Friday, May 6, 2022.  The court will also permit but not require brief opening statements.  Presentations shall not exceed twenty (20) minutes for the plaintiffs and twenty (20) minutes for the defendant and defendant-intervenor.

I.    **Questions to Plaintiffs Asociacion de Exportadores e Industriales de Aceitunas de Mesa ("ASEMESA" or "Plaintiffs")**

1.    The Government notes that Commerce's specificity analysis depends on "the level of benefits provided rather than on the number of subsidies given to different industries." Def.'s Br. at 9, Jan. 12, 2022, ECF No. 80 (quoting <u>Countervailing Duties</u>, 63 Fed. Reg. 65,348, 65,359 (Dep't Comm. Nov. 25, 1998)).  Please explain how this overarching principle may be reconciled with your position that benefits reflective of "size of operation (i.e., the number of hectares/entitlements possessed)" are necessarily proportionate.  Pls.' Br. at 5, Dec. 3, 2021, ECF No. 76.

2.    Is Commerce correct that "the only information on the record regarding the distribution of assistance under the BPS on an industry basis" was the petition?  Def.'s Br. at 10; Final Remand Redetermination at 41, Nov. 3, 2021, ECF No. 74-1 ("<u>Second Remand Results</u>").

      a.    Please respond to Commerce's assertion that the parties did not "supplement the record with information other than that provided in the Petition at any point during the investigation." <u>Id.</u> at 47.

3.    Is an analysis of dependence separate from use consistent with Commerce's past practice? Please identify those prior investigations which best support your position.

4.    You argue that "55 percent still falls well short of the legal standard."  Pls.' Br. at 3. The court has previously held that Commerce's traditional interpretation of "substantially dependent" entails the use of "most or at least half of the demand of the raw agricultural product."  <u>Asociacion de Exportadores e Industriales de Aceitunas de Mesa et al. v. United States</u>, 44 CIT __, __, 429 F. Supp. 3d 1325, 1345 (2020) ("<u>ASEMESA I</u>").  Is it your position that the court's conclusion is incorrect?

5.    You contend that Commerce's notion of "absolute dividing lines among olive varietals as far as use is demonstrably false." Pls.' Br. at 10.  Is it also false that "almost all" of certain varietals of olives are used in either the production of olive oil or of table olives?  <u>See, e.g.,</u> <u>Second Remand Results</u> at 31.

6.    Commerce's <u>Second Remand Results</u> find that "from year to year, farmers tend to continue to harvest olives for the same end use," while you argue that the olive market is "extremely fluid." <u>Second Remand Results</u> at 63; Pls.' Br. at 12.  Please respond to Commerce's analysis of the statistics provided by the Government of Spain.

      a.    Please further respond to Commerce's position that, even where varietals are suitable for both mill and table use, certain trade standards must be met to permit

the sale of the relevant olives as table olives.  See Second Remand Results at 62–63.

7.  What authorities best support your overall argument?

8.  Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

II.  **Questions to Defendant the United States ("Government") and Defendant-Intervenor the Coalition for Fair Trade in Ripe Olives ("Coalition")**

1.  Please respond to Plaintiffs' argument that Commerce's failure to consider the production of green olives in its analysis of ripe olives renders its determination unsupported by substantial evidence and contrary to law.  See Pls.' Br. at 32.

    a.  Setting aside Plaintiffs' arguments regarding the existence of a single line of production, if Commerce properly excludes those olives ultimately destined for use in the production of olive oil, should it not additionally exclude those olives destined for use in the production of green olives, regardless of possible fungibility?

2.  If all raw olives intended for use in the production of ripe olives could instead be used in the production of olive oil (however non-optimally), would that fact alone permit a finding that the demand for raw olives is not substantially dependent upon the demand for ripe olives?

3.  Please respond to Plaintiffs' argument that Commerce's inclusion of "71,814 tons of Hojiblanca grown for mill but used for table olive production in its numerator" undercuts Commerce's argument that the end uses of dual use olives "are determined at the start of the season" and thus such dual use olives are not ultimately fungible. Pls.' Br. at 27 (citing Second Remand Results at 51).

4.  What cases and authorities best support your overall argument?

5.  Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

III.  **Questions to Defendant the United States**

1.  You note that a proportionality analysis "should normally focus on the level of benefits provided rather than on the number of subsidies given."  Def.'s Br. at 9 (quoting Countervailing Duties, 63 Fed. Reg. 65,348, 65,359 (Dep't Comm. Nov. 25, 1998)). ASEMESA proposes that the proportionality analysis should, in this case, focus on an acreage-to-benefit comparison.  Pls.' Br. at 5.  Setting aside for the moment the

underlying evidence for this claim, is it possible that a benefit provided throughout the agricultural sector could be proportionate on such basis (e.g., with respect to arable land) as well as the bases you posit (e.g., with respect to percentage of total output)?

2. Please identify any analogous prior investigations in which Commerce similarly bifurcated (or further separated out) a specific agricultural product into distinct raw agricultural products using categories reflective of end use as well as innate biological differences.

## IV.    Questions to Defendant-Intervenor the Coalition for Fair Trade in Ripe Olives

1. With reference to your argument regarding minimum thresholds for substantial dependence, is it your position that demand for fresh raspberries could in theory be dependent on <u>all</u> processed raspberry products, even if each individual product comprised only a small portion of the total demand?  Def.-Inter.'s Br. at 12–13, Jan. 12, 2022, ECF No. 81.  If so, is there a lower bound for such analysis?

Sincerely,

*/s/ Gary S. Katzmann*
Gary S. Katzmann
Judge